IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America | : | District Judge Susan J. Dlott |
| | : | Magistrate Judge Timothy Hogan |
| | : | |
| v. | : | ORDER ADOPTING MAGISTRATE'S |
| | : | REPORT AND RECOMMENDATION |
| | : | ON RESTITUTION |
| | : | |
| Charlene Bold, | : | Case No. CR-1-03-129 |
| Horace Roberson, | : | Case No. CR-1-04-76 |
| John Todd Killinger, | : | Case No. CR-1-04-77 |
| Philip Jasper, | : | Case No. CR-1-04-140 |
| Donald Powers, Jr., | : | Case No. CR-1-05-11 |
| Steven Minger, | : | Case No. CR-1-05-74 |
| Ronald Trester | : | Case No. CR-1-05-86 |
| | : | |
| Defendants | : | |

This matter is before the Court on Magistrate Judge Hogan's Report and

Recommendation on Restitution ("R&R") (doc. #28 in CR-1-05-86[1]), restitution petitioner Price

Hill Will's Objection (doc. #31), and Defendant Ronald Trester's Response (doc. #32).  The

Court, subject to the supplemental discussion set forth in this Order, **ADOPTS** the R&R and

declines to order Defendant Trester to pay restitution to Price Hill and associated Cincinnati

neighborhoods.  The Court does not rule on restitution against Defendants Charlene Bold,

Horace Roberson[2], John Todd Killinger, Philip Jasper, Donald Powers, Jr., and Steven Minger,

in part because the relevant demands have been withdrawn pursuant to civil settlements.

---

[1] Many of the pleadings and other documents referenced in this Order appear, under different document numbers, in multiple Defendants' criminal dockets.  Except as otherwise stated, this Order numbers documents as they appear in the docket of Ronald Trester, CR-1-05-86.

[2] See note 6, infra.

## I.  BACKGROUND[3]

In October 2005, this Court sentenced Defendants Bold, Roberson, Killinger, Jasper, Powers, Minger, and Trester to terms of incarceration ranging from six to forty-six months for their participation in a mortgage fraud or "flipping" scheme involving an estimated 800 homes in greater Cincinnati.  In the early 2000s, many of these homes–typically small properties in poorer Cincinnati neighborhoods–were purchased and then resold under inflated mortgages secured with the use of falsified appraisals and buyer financial statements.  Well over a hundred of the "flipped" mortgages have since gone into default, triggering a string of foreclosures on properties worth well less than their associated debt burdens.  Some of the homes have remained unoccupied and untended since foreclosure, fostering–according to petitioner Price Hill Will–property value declines and other ills in the surrounding communities.  (See, e.g., doc. #20 at 3-8 and Exhib. 2 (discussing vacant properties' impacts on neighborhoods)).

Representatives of Trustcorp Mortgage Company ("Trustcorp"), an Indiana bank that sustained losses on a number of fraudulent loans, and Price Hill Will, a nonprofit community group based in Cincinnati's Price Hill neighborhood, where a number of the flipped homes are located, appeared at Defendants' sentencing hearings to petition the Court for awards of criminal restitution pursuant to the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663 *et seq.*, and the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A.  Trustcorp initially sought restitution from Defendants Bold, Roberson, Jasper, Powers and Killinger,[4] while

---

[3] The court includes this section to provide some basic context for the legal analysis that follows, and incorporates by reference the more detailed statements of facts in Judge Hogan's R&R and other papers pertaining to this restitution proceeding.

[4] Trustcorp settled its restitution demand against Defendant Minger out of court shortly before Minger's October 28, 2005 sentencing hearing.  Trustcorp also sought restitution from one

Price Hill Will sought restitution from Defendants Minger, Killinger and Trester.  Pursuant to its authority under the restitution statutes, the Court set Trustcorp's and Price Hill Will's restitution demands for a hearing before Judge Hogan.  See 18 U.S.C. §§ 3664 (d)(5), (d)(6)[5]; doc. #17.

Judge Hogan held an evidentiary hearing on December 1, 2005, continued the hearing on December 8th, and issued his R&R on December 14th.  (See generally docs. ##s 24, 26, 28.) Counsel for the above-referenced Defendants, Trustcorp, Price Hill Will, and the United States entered appearances.  While the hearing was initially designed to determine the propriety of all the restitution claims referenced above, all but one of these claims–Price Hill Will's claim against Defendant Trester–were gradually withdrawn as Trustcorp and Price Hill Will reached out-of-court settlements with the other Defendants.[6]  (See id. at 1-2.)  The two-day proceedings, and Judge Hogan's R&R, therefore focused on Price Hill Will's restitution claim against Defendant Trester.

---

additional participant in the mortgage flipping scheme not named in this restitution proceeding, Steven Carey.  Because Carey did not dispute Trustcorp's demand at his October 25th, 2005 sentencing hearing, the Court awarded restitution at the time of sentencing instead of referring the matter to Judge Hogan.  The week of October 24th, 2005, the Court also sentenced several other participants from whom neither Trustcorp nor Price Hill Will sought restitution.

[5] The procedures at 18 U.S.C. § 3664 govern both VWPA and MVRA restitution awards. See 18 U.S.C. § 3663(d) (VWPA) and 18 U.S.C. § 3663A(d) (MVRA).

[6] Trustcorp and Defendant Roberson have agreed on a restitution figure of $616,296.02 for all relevant properties except 1120 Eddy Street.  (Doc. #28 at 1.)  The Court's understanding is that, as of the restitution hearings, Trustcorp had not resold 1120 Eddy Street at a sheriff's sale and therefore did not have a final mortgage loss estimate on which to base a restitution demand. Because the Court must issue a final restitution order within 90 days of Roberson's October 25th hearing, Trustcorp–if it ultimately decides to pursue additional restitution from Roberson–must petition the Court for an amended order under the good-cause provisions of 18 U.S.C. § 3663(d)(5). See 18 U.S.C. § 3664(d)(5) (providing that the Court "shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing") and United States v. Jolivette, 257 F.3d 581, 582-83 (6th Cir. 2001) (voiding restitution in amount to be determined over 90 days from sentencing).

At the hearing and in its pleadings, Price Hill Will presented detailed evidence–including customized expert witness reports and testimony–linking the individual home foreclosures and resultant vacancies triggered by Trester's mortgage flipping to declines in the resale value of other properties within one-eighth and one-quarter-mile radii of the flipped homes.  (<u>See</u> <u>generally</u> doc. #28 at 2-4; <u>see also</u> doc. #20 and attached exhibits.)  Price Hill Will's experts began by explaining the findings of a large-scale, Chicago-based regression study that attempted to isolate and capture the effect of property foreclosures as expressed through percentage declines in the dollar resale value of neighboring properties.  (<u>See, e.g.</u>, doc. #28 at 2-3.)  They then applied the percentage declines identified in the Chicago study to local county assessor's records for all properties located within a one-eighth[7] mile radius of each of a sample of eleven greater Cincinnati homes Price Hill Will's counsel, Legal Aid of Greater Cincinnati, had identified as foreclosed as a result of the "flipping" scheme.  (<u>See</u> Price Hill Will's Restitution Hearing Exhib. #35 at 1.)  They determined the total property losses associated with each foreclosed home in the representative sample and averaged the results to determine the average property value loss, expressed in dollars, associated with each representative foreclosed property.  (<u>Id</u>.)  Finally, because Legal Aid knew Trester to be involved with at least eleven foreclosures, Price Hill Will's experts multiplied the average dollar loss figure by eleven to estimate the total property value losses stemming from Trester's flipping activities.  (<u>Id</u>.)  Price

---

[7] The relevant R&R text cites a 1/4 mile figure, but the Court believes this is an inadvertent error.  The report of expert witness Elizabeth Blume clearly states that the Cincinnati calculations were based on the 1/8 mile radius.  <u>See</u> Price Hill Will's Restitution Hearing Exhib. #35 at 1.  In addition, as the R&R states in the preceding paragraph, the Chicago regression results for resale values on properties between an eighth and quarter-mile radius of the subject foreclosed properties were, according to Price Hill Will's own experts, not statistically significant.  (<u>See</u> doc. #28 at 4.)

Hill Will submits, based on this analysis, that it is entitled to a restitution award of up to[8]

$1,114,751 from Trester.  (Id.)

Price Hill Will also described, in its papers and through the testimony of fact witness and

State Representative Steve Driehaus, how any restitution ordered by the Court would be used to

establish a community rehabilitation fund.  (See docs. ##s 25 at 1-2, 28 at 2-3, and 31 at 7-9.)

The fund would be administered by the nonprofit Greater Cincinnati Foundation and used to

finance projects in both Price Hill and other Cincinnati neighborhoods targeted by the flippers.

(See docs. ##s 25 at 1-2 and 31 at 8-9.)  Significantly, the proposed fund would focus on

targeted, high-profile rehabilitation work by nonprofit groups operating pursuant to community

development plans, rather than grants to individual homeowners.  (Id. at 7-9.)  Price Hill Will,

noting that no individuals have petitioned this Court for restitution in any event, submits that

these pooled, targeted investments will be a far more efficient way to ensure that any restitution

the Court orders actually "remed[ies] the harm caused to the community at large."  (Id. at 7-8.)

## II.    STANDARD OF REVIEW

Because this Order disposes of both Price Hill Will's restitution claim and the restitution

portion of Defendant Trester's sentence, Judge Hogan's R&R is subject to *de novo* review.  See

Federal Rule of Civil Procedure 72(b) and 18 U.S.C. § 3664(d).  Restitution orders may be based

on judicial fact findings established by a preponderance of evidence, and are not subject to the

requirements of United States v. Booker, 125 S. Ct. 738 (2005).  United States v. Sosebee, 419

---

[8] The Chicago study estimated a 0.9% average decline in Chicago-wide property values for homes within an eighth-mile radius of each foreclosure.  When low- to moderate-income neighborhoods were isolated, the average decline was 1.4%.  The estimated loss from Trester's flipping is $694,848 if the 0.9% figure is used, and $1,114,751 if the 1.4% figure is used.  Price Hill Will submits–and the Court agrees–that the 1.4% figure is more apposite because Trester and his fellow Defendants appear to have targeted primarily lower-income Cincinnati neighborhoods.

F.3d 451, 460-62 (6th Cir. 2005); see also United States v. Thorpe, No. 97-5078, 1998 WL 738624, at **9 (6th Cir. Oct. 18, 1998) (unpublished).

## III.    RESTITUTION FROM DEFENDANT TRESTER

In his R&R, Judge Hogan recommends denying Price Hill Will's petition for restitution from Defendant Trester.  He bases this recommendation primarily on his conclusion that the community of Price Hill ("Price Hill")–and, presumably, other Cincinnati neighborhoods where properties were "flipped"–does not qualify as a "victim" under the MVRA.  (See doc. #28 at 4-11.)  He also suggests that even assuming Price Hill constitutes a proper "victim," the restitution proposed in this case would be too difficult to determine and administer, and therefore implicates "complex issues of fact" that "complicate or prolong the sentencing process to a degree that the need to provide restitution . . . is outweighed by the burden on the sentencing process."  (See id. at 7-9 and 11-12 and 18 U.S.C. § 3663A(c)(3)(B).).  Not surprisingly, Price Hill Will objects to much of the analysis in Judge Hogan's R&R, while Defendant Trester recommends that the Court adopt it.  (Docs. ##s 31, 32.)  The United States endorsed a restitution award to Price Hill Will at Trester's sentencing hearing and in a pre-hearing Memorandum to Judge Hogan (see doc. #19), but has not objected to or otherwise commented on the pending R&R.

Upon its own review of the R&R, applicable law, and relevant pleadings, the Court concurs with Judge Hogan's ultimate conclusion that the Court cannot legally grant restitution to Price Hill Will under the MVRA.  For this reason, and because the parties have not identified any other relevant authority for such an award, the Court declines to order restitution from Defendant Trester to Price Hill and associated neighborhoods.  The Court reaches different conclusions with respect to many of the secondary issues raised by Price Hill's petition,

6

however, and therefore **ADOPTS** Judge Hogan's R&R as modified by the additional remarks below.

### A.       Statutory Framework

#### 1.       Criminal Restitution Statutes

Federal courts have "no inherent authority" to order criminal restitution, so all restitution awards must flow from specific statutory authority.  <u>United States v. Donaby</u>, 349 F.3d 1046, 1052 (7th Cir. 2003).  In this case, the only relevant authority identified by the parties is the MVRA, codified at 18 U.S.C. § 3663A.  While the companion Victims and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663, also provides for restitution in some cases, the VWPA cannot support an award of restitution for any offense the MVRA covers.  <u>See</u> VWPA, 18 U.S.C. § 3663(a)(1)(A) (excluding "offenses described in section 3663A(c)" of the MVRA).  Defendant Trester pled guilty to tax evasion in violation of 26 U.S.C. § 7201, bank fraud in violation of 18 U.S.C. § 1344, and conspiracy in violation of 18 U.S.C. § 371.  (Doc. #3.)  The MVRA governs restitution for any "offense against property" under Title 18 of the United States Code, including "any offense committed by fraud or deceit."  While the VWPA could presumably support a restitution award for Trester's Title 26 tax count, Price Hill Will's claim is factually predicated on Trester's fraudulent mortgage activities under his Title 18 counts.  Therefore, the MVRA is the more appropriate basis for an award to the affected communities.[9]

#### 2.       MVRA Structure and History

---

[9] At Trester's sentencing, the Court ordered him to pay $223,964.37 in tax restitution to the Internal Revenue Service.  MVRA restitution to other victims would be payable before this tax restitution.  <u>See</u> 18 U.S.C. § 3664(i) (where "the United States is a victim, the court shall ensure that all other victims receive full restitution before the United States receives any restitution.")

Congress enacted the MVRA as part of the Victims Justice Act ("Act") of 1995.  See S. Rep. 104-179, at *14 (hereinafter "Conference Report").  The MVRA was intended to ensure that "restitution be made to all identified victims" of the federal offenses enumerated in section 3663A of Title 18, with "victims" further defined as those who suffer "physical injury or pecuniary loss directly and proximately caused by the course of conduct under the count or counts for which the offender is convicted."  Id at 18-19.[10]  The conference committee emphasized that cases "in which the amount of the victim's losses are speculative, or in which the victim's loss is not causally linked to the offense, should not be subject to mandatory restitution."  Id. at *19.  The MVRA states, in relevant part, that

> [T]he term "victim" means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

18 U.S.C. § 3663A(a)(1)(2).  This statutory definition of "victim" is identical to the one that appears in the VWPA.  See 18 U.S.C. § 3663(a)(1)(2).

The conference report to the Victims of Justice Act suggests only two exceptions to the general rule that restitution under the MVRA be limited to persons who qualify as "victims" under the definition above.  The first exception pertains to convictions "obtained by a plea bargain," where courts must order–in addition to any restitution generally mandated under the MVRA–"all other restitution included in the plea bargain and supported by fact . . . ."  Id.  This additional restitution may include, "*if agreed to by the parties in a plea agreement*, restitution to persons *other than victims* of the offense."  18 U.S.C. § 3663A(a)(1)(3) (emphasis added).  The

---

[10] As discussed below, the MVRA also mandates restitution to "other parties agreed to in any plea agreement," including "persons *other than the victims* of the offense."  Id.; 18 U.S.C. § 3663A(a)(3) (emphasis added).

Court does not read Trester's plea agreement, which states simply that his "cooperation in this matter also includes making restitution in this matter in a schedule and amount to be determined" by this Court, see doc. #3 at 4 ¶ (f), to endorse a restitution award to any broader class of victims than those otherwise provided for under the general provisions of the MVRA.

The history and structure of the MVRA also suggest that restitution may be broader with respect to certain drug offenses under Part D of the Controlled Substances Act of Title 21.  See Conference Report at *19 (noting that "other than offenses" under the Controlled Substances Act, "the committee specifically rejects expanding the scope of offenses for which restitution is available beyond those for which it is available under current law.")  The MVRA itself does not expressly distinguish between controlled substance offenses and property offenses like Trester's for purposes of the scope of restitution.  See 18 U.S.C. § 3663A(c)(1)(A)(ii).  But the VWPA–which, as noted above, includes the same standard definition of "victim" as the MVRA–provides that for controlled substance offenses "in which there is no identifiable victim," courts may order "community restitution" "based on the amount of public harm caused by the offense."  See 18 U.S.C. §§ 3663(c)(1), (c)(2)(A), and (c)(6).  Even in these cases, however, restitution may be paid only to "State entities" designated to "administer crime victim assistance" and "receive Federal substance abuse block grant funds"; there is no express provision for awards to community or other nonprofit groups.  Id. § (c)(3)(A)-(B).

Congress' provision for two specific cases in which restitution may be awarded to parties who might otherwise fall outside the statutory definition of "victim" strongly suggests that in all other cases, restitution must be limited to those parties who satisfy that statutory definition.  Because neither of the recognized exceptions appears to encompass Price Hill Will's claim against Trester, the Court concurs with Judge Hogan's finding that Price Hill–and by extension,

9

any other Cincinnati communities targeted in the mortgage flipping scheme–are eligible for criminal restitution only if they qualify as "victims" under subsection (a)(2) of the MVRA.

### C. Price Hill and Other Neighborhoods' Status as MVRA "Victims"[11]

As discussed above, Price Hill Will seeks restitution for Price Hill and other Cincinnati communities targeted by the mortgage flipping scheme. This raises several important questions about the scope of the MVRA's "victim" definition, which the Court addresses in turn.

#### 1. Identification of Individual Victims

As a threshold matter, it is unclear whether Price Hill Will's claim–which Price Hill Will itself emphasizes is not brought on behalf of individual property owners–sufficiently *identifies* the "victim" or "victims" to be compensated in this case. See, e.g., United States v. Miller, 900 F.2d 919, 922 (6th Cir. 1990) (questioning VWPA restitution order in part because "the record is ambiguous as to who is to receive the restitution payments ordered by the court."). Because restitution awards to entities are sometimes proper under the MVRA,[12] and there is little case law on the general propriety of community-based awards, the Court will assume for the purposes of this Order that an organization does not forfeit its right to restitution simply because it seeks restitution for a "community" or communities instead of some more discrete or specifically described group of individuals.

---

[11] In the course of these restitution proceedings, the parties and Judge Hogan have cited–and this Court has reviewed–many opinions from courts in other Circuits. The Court concludes that the question of Price Hill's "victim" status can be largely resolved by reference to Sixth Circuit cases, including cases construing the identically worded definition of "victim" in the VPWA, and therefore cites other cases primarily for illustrative purposes.

[12] For instance, this Court has sentenced other mortgage "flippers" to pay criminal restitution to Trustcorp, a private bank. See note 4, supra. Government entities, including municipal agencies, may be entitled to restitution under the identical "victim" definition in the VWPA. See United States v. Martin, 128 F.3d 1188, 1191 (7th Cir. 1997) and doc. #19 (United States' brief) at 3.

## 2.      Showing of "Proximate" Harm to Neighborhoods

Under the plain language of the MVRA, Price Hill Will must show that Price Hill and associated neighborhoods were "directly and proximately harmed" by Defendant Trester's "criminal conduct in the course of" the flipping scheme.  See 18 U.S.C. § 3663A(a)(1)(2).  Judge Hogan concludes in his R&R that the neighborhoods were proximately harmed, and that their injuries are sufficiently quantifiable to support a restitution award.  (Doc. #28 at 5-6, 8, and 11.) While the Court agrees that Price Hill Will has made a credible quantitative showing of harm, it is less sure that the harm–as Price Hill Will has chosen to quantify it–is sufficiently tied to either Trester's criminal activities or the putative community impacts of those activities to qualify as "proximate" harm under the MVRA.

One empirical issue is that, under the methodology described above, Price Hill Will's experts extrapolated from a representative sample of other "flipped" properties to estimate the property value losses in the neighborhoods surrounding the 11 properties known to have been flipped by, or with the help of, Trester.  See discussion at Part I, supra.  The Court is extremely reluctant to penalize Price Hill Will for its failure to further tailor this aspect of its analysis, because Price Hill Will had to petition for release of the property addresses associated with each specific defendant and did not obtain the information until shortly before the hearings.  (Doc. #22; docs. #s 26, 29 to CR-1-05-74; doc. # 31 to CR-1-04-77).  However, even assuming arguendo that Price Hill Will's reliance on loss averages is acceptable under the MVRA, there remains the issue of whether the community-based restitution award proposed here is properly predicated on estimated declines in the resale value of individual homes.  The Court understands that from a remedial perspective, it may indeed be more valuable to pool restitution dollars in the hands of community groups than to cut checks to individual homeowners.  The Court also

11

recognizes that as a functional matter, the estimated decline in nearby home values may be the only quantifiable proxy for the broader, more diffuse community damage wrought by Trester's flipping activities. Nevertheless, it is a crude proxy at best.

Even if the Court were to conclude that Price Hill Will has shown "proximate" harm, a question it does not decide here, it could not award restitution unless it appeared that the communities Price Hill Will claims to speak for[13] were–as a matter of statutory intent, and on the facts of this case–proper MVRA "victims" of Trester's property crimes. Unfortunately, the case law strongly suggests that the communities are not proper victims.

### 3. General Scope of "Victim" Definition

Price Hill Will argues, citing the Sixth Circuit's decision in United States v. Durham, that anyone "who suffered injury as a result of the defendant's actions that surrounded the commission of the offense, regardless of whether the actions are elements of the offense charged," may constitute a "victim" under the MVRA. United States v. Durham, 755 F.2d 511, 513 (6th Cir. 1985); see also doc. #31 at 3. Durham, however, was decided a decade before the MVRA's adoption, and under an earlier version of the VWPA that did not include any statutory definition of "victim." See id. at 512-513 (acknowledging that "the exact contours" of the definition of "victim" must "wait further experience" under the statute). Even assuming Durham remains good authority on this question, then, it simply begs it: is the MVRA's current definition

---

[13] A related question is whether Price Hill Will has legal standing to seek restitution on behalf of Price Hill, let alone the other neighborhoods affected by Trester's flipping. Because resolution of this issue would not change the ultimate decision here, and the Court must make a restitution determination within the MVRA's 90-day post-sentencing window, the Court assumes for the sake of analysis that Price Hill Will has standing to seek its proposed restitution. Cf., e.g., Summit Cty. Democratic Cent. and Executive Comm. v. Blackwell, 388 F.3d 547, 550 (assuming, in light of short time frame for court to resolve other issues, plaintiffs' standing).

of "victim" broad enough to encompass the communities seeking restitution here? The Court's review of more current authority suggests that the term was not intended to encompass Price Hill and other affected communities under the facts of this case.

As the Sixth Circuit has noted, the definition of "victim" in the current MVRA and VWPA originated in a 1990 amendment to the VWPA designed to "broaden" the scope of restitution in cases involving "a scheme, conspiracy, or pattern of criminal activity." See, e.g., United States v. Jackson, No. 97-5977, No. 97-6014, 1998 WL 344041, at *2 (6th Cir. May 28, 1998) (unpublished). In cases like Trester's, where a defendant is convicted of a conspiracy offense, courts may now award restitution to all individuals or entities defrauded in the "entire scheme" with which a defendant was engaged, not just those defrauded in the specific offense counts to which a defendant has been found guilty. United States v. Davis, 170 F.3d 617, 627 (6th Cir. 1999); United States v. Sosebee, 419 F.3d 451, 458-59. The pool of "victims" eligible for MVRA restitution thus includes individuals or entities not harmed by a defendant's convicted offense counts, but harmed in the same general manner as the victims of those counts, or as part of same general scheme giving rise to the conviction. See, e.g., Davis, 170 F.3d at 627 (award to all individuals targeted by defendant's telemarketing fraud); United States v. Jamieson, 427 F.3d 394, 418 (6th Cir. 2005) (award to all investors in mail fraud and money laundering scheme); United States v. Johnson, 430 F.3d 383, 401 (6th Cir. 2005) (award for predicate acts committed "in the course of the RICO" activity giving rise to defendant's RICO and RICO-conspiracy convictions"); United States v. Tate, Nos. 03-3498, 03-5701, 03-6376, 135 Fed. Appx. 821, 823, 827-28 (6th Cir. June 10, 2005) (unpublished) (award to issuer of stolen card used only by defendant's wife from defendant who aided and abetted wife's credit card fraud ); United States v. Daniel, Nos. 99-5963, 99-5985, 14 Fed. Appx. 355, 357-58, 364-65 (6th Cir. June 19, 2001)

13

(unpublished) (award to the insurer of a burned house trailer that defendant owners, in the course of aiding and abetting an attempt to manufacture methamphetamine, had lent to friends for use as drug manufacturing lab).

There is little support in the case law, however, for extension of restitution to entirely different *classes* of victims than those targeted in the offense conduct giving rise to a defendant's conviction.  This Circuit has occasionally affirmed restitution awards to parties outside the class of individuals or entities targeted by the immediate offense or conspiracy giving rise to a defendant's conviction.  However, the cases have typically involved defendants who were forced to pay restitution for physical injuries or property damage they caused while fleeing a crime scene.  See generally United States v. Mounts, 793 F.2d 125 (6th Cir. 1986) (award to owner of car damaged in collision with defendant's getaway car); Durham, 755 F.2d at 513 (6th Cir. 1985) (award to insurer of car burned during bank robber's escape).  The property value declines Price Hill Will alleges in this case may be–at least in part, and as Judge Hogan found–proximately caused by the mortgage flipping scheme.  (See doc. #28 at 5-6, 11.)  But they are considerably less immediate and arguably less intended than the collateral losses described in other restitution cases, and the Court cannot ignore this qualitative contrast in the nature of the harms.  See, e.g., United States v. Miller, 900 F.2d 919, 923 (6th Cir. 1990) (emphasis added) (suggesting that courts awarding restitution must draw the line at those "injuries . . . committed to *aid* the defendants in committing the offenses of conviction").  The case law thus strongly suggests that–except where a defendants' criminal activities cause some fairly immediate, concrete

damage to other parties—the only "victims" entitled to MVRA restitution are those individuals or entities actually targeted by the offenses giving rise to a defendant's conviction.[14]

The Court's construction of "victim" is reinforced by the Sixth Circuit's recent reaffirmation, in the MVRA context, of the longstanding VWPA rule that the "loss caused by the conduct underlying the offense of conviction establishes the outer limits of a restitution order." Jamieson, 427 F.3d at 418 (citing Hughey v. United States, 495 U.S. 411, 420 (1990)). The Circuit has indicated that—at least in a typical case—the relevant "losses" are those considered and calculated in a defendant's presentence report. See Jamieson, 427 F.3d at 417-18. Trester's presentence report estimates that he is accountable for $6,474,693.75 in intended losses on his conspiracy and bank fraud counts. At first glance, Price Hill Will's requested award of $694,848 to $1,114,751 falls well under the numerical restitution "limit" or "cap" established by the presentence report. The figure in Trester's report, however, is based only on projected long-term mortgage losses to defrauded banks. In other words, the total dollar "losses" associated with Trester's offense conduct for sentencing purposes do not even encompass the losses Price Hill Will alleges here. And as discussed above, the relevant MVRA case law strongly suggests that to the extent a court broadens its restitution award to account for losses from instances of offense conduct other than those mentioned in a plea, those losses must be of the same *kind* as those underlying the conviction.

---

[14] The Court recognizes that white-collar fraud is inherently less likely than traditional crimes to generate immediate, identifiable collateral damage than traditional crimes, and that—under the construction of the MVRA discussed here—restitution awards in fraud cases will often understate the social harm from the frauds. But this Court is constrained to follow the current law, and that law does not appear to recognize more diffuse harms as a basis for MVRA restitution.

In light of the above, the Court must conclude that Price Hill and the other greater Cincinnati communities on whose behalf Price Hill Will seeks restitution are not "victims" for purposes of the MVRA.  Therefore, as a matter of law–and despite the considerable *factual* merits of Price Hill Will's claim that Trester's participation in the flipping scheme has harmed property values (and, by extension, other facets of life) in the affected neighborhoods–the communities are simply not entitled to restitution under the statute.

### D.    Other Issues

This Court must deny restitution because Price Hill Will has not shown that the Cincinnati communities it seeks restitution for are "victims" for purposes of the MVRA.  For purposes of this case, therefore, the Court need not resolve all of the complex secondary issues explored at length in the restitution hearings, Judge Hogan's R&R, and the parties' pleadings. Nevertheless, because the MVRA is a relatively new statute and these proceedings have raised several important, interesting, and apparently novel questions about its application, the Court feels it prudent to include the following.

### 1.    Consideration of Practical Difficulties in Administering Restitution

At various points in his R&R, Judge Hogan suggests that–even if restitution were otherwise proper under the terms of the MVRA–the administrative difficulties of calculating and redistributing this award would overwhelm the Court and Probation Office.  The MVRA does not require restitution for property crimes where "the number of identifiable victims is so large as to make impracticable," or "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." 18 U.S.C. §§ 3663A(c)(3)(A), (c)(3)(B).  This restriction appears to be rooted in Congress'

16

concern that drawn-out restitution proceedings would strain court resources and unduly delay the sentencing process.  See, e.g., Conference Report at *20 (expressing concern that "the restitution phase of the sentencing process could devolve into a full-scale evidentiary hearing . . . contrary to the interests of the swift administration of justice.")

While the restitution issues presented in this case are undoubtedly complex, the Court does not regard them as so complex that–as a matter of law, and assuming Price Hill and its sister communities were appropriate MVRA "victims"–they would bar restitution here. Certainly, as the record of these hearings reveals, the calculation of an appropriate dollar restitution award to Price Hill and other communities raises many difficult empirical issues.  But Price Hill Will has done an impressive job of trying to resolve these issues in the limited time frame available, and the Court agrees with its assertion that "[c]ourts should not . . . lightly refuse to award restitution . . . simply because calculating an award may present complications." (Doc. #31 at 6).  As the Third Circuit has argued in the VWPA context, mere "[d]ifficulties of measurement" should not bar restitution in "unusual cases where the precise amount owed is difficult to determine.  United States v. Hand, 863 F.2d 1100, 1104 (3rd Cir. 1988) (internal citations omitted).

To the extent a restitution award threatens to create additional administrative difficulties *after* entry of a final restitution order, the Court is unsure what weight–if any–those difficulties should carry in its determination.  The MVRA's text and legislative history do not bear directly on this question, and courts have traditionally enjoyed broad discretion in shaping restitution orders within the bounds of the law.  See, e.g., United States v. Padgett, 892 F.2d 445, 449 (6th Cir. 1989) ("Once the required factors are considered the court has very broad discretion in setting the terms of the restitution order.")  While there are limits to what a Court can determine

17

in the MVRA's 90-day post-sentencing window, the Court does not think it is appropriate to deny deserving "victims" restitution simply because the facts of the case suggest an award would be challenging to administer.  Rather, the Court is persuaded by the Third Circuit's finding that courts should strive to "reach an expeditious, reasonable determination of appropriate restitution by resolving uncertainties with a view toward achieving fairness to the victim."  Hand, 863 F.3d at 1104.

### 2.      Consideration of Defendant Trester's Ability to Pay Restitution

Judge Hogan also suggests that–even if Price Hill were a proper "victim" for MVRA purposes, and calculation of restitution not too complex–it would nevertheless be improper for this Court to order restitution because "the pre-sentence investigation in regard to Defendant Trester indicates both a present inability to pay restitution as well as a future likely inability to pay restitution," and any potentially available assets could not realistically be set aside in the 90-day period within which the Court must impose a final restitution order.  (Doc. #28 at 11; see also id. at 7 (stating that "trial courts must consider the financial resources of the Defendant in ordering restitution.").)  The Sixth Circuit, however, has indicated that "some sort of restitution" award is "mandatory–regardless of a defendant's financial situation–when a defendant is convicted of . . . an offense against property" under the MVRA.  United States v. Vandenberg, 201 F.3d 805, 813 (6th Cir. 2000).  And although the Circuit has recognized certain defendants may as a practical matter be unable to pay any restitution ordered under the MVRA, see id. at 813 n. 3, the Court cannot hold that Defendant Trester is so situated.

As the Court noted at sentencing, Trester's presentence report describes certain assets–including a $657,000 home the report describes as recently transferred out of Trester's and into his wife's name–that could be liquidated to support a significant restitution payment.

18

Cf., e.g., Miller, 900 F.2d at 925 (affirming restitution award several times defendants' incomes and emphasizing assets found in presentence report). While it may be impossible to secure such assets within the 90-day post-sentencing window for issuance of a restitution order, the MVRA's case law and legislative history suggest that such difficulties should not foreclose a restitution award so long as it is possible that a defendant could eventually become able to pay some share of that award.[15] See Vandenberg, 201 F.3d at 813 n. 3 and Conference Report at *20 (emphasizing conference committee's concern "that defendants not be able to fraudulently transfer assets that might be available for restitution," and encouraging "strict review" of defendant's financial statements).

In short, the Court does not regard either the logistical challenges of distributing community-based restitution, or Trester's putative inability to pay any substantial award, as *independent* barriers to ordering restitution under the MVRA. The problem here is that, as discussed at Part III.B above, the MVRA's "victim" definition simply does not permit the Court to order any award to Price Hill Will.

### 3. Consideration of a "Hierarchy of Victims" Entitled to Restitution

Judge Hogan also discusses a theoretical "hierarchy of victims" whereby "community" restitution claimants like Price Hill and associated neighborhoods would be entitled to restitution

---

[15] In so stating, the Court does not endorse Price Hill Will's suggestion–by reference to United States v. Berardini, 112 F.3d 606, 611-12 (2nd Cir. 1997)–that courts *always* have discretion to establish restitution funds for as-yet-unidentified victims. (See doc. #25 at 2.) Berardini involved a restitution award to a group of victims for whom the Court had names, but–in many cases–no current addresses. Id. at 609. Here, by contrast, Price Hill Will has expressly *declined* to seek restitution on behalf of any specific, named property owners or neighborhood residents. See Part I and introduction to Part III.C, supra. While the Court need not decide this issue today, see introduction to Part III.C, supra, restitution awards to "communities" not defined by reference to individual members may not be specific enough to pass muster under the MVRA–even if the facts suggest many community members would themselves qualify as MVRA "victims."

19

awards only where a defendant had sufficient assets to first satisfy the demands of mortgage lenders and individual, innocent purchasers of falsely appraised "flipped" properties.  (See doc. #28 at 6-7.)  While this ranked scheme has some practical appeal in a world where the aggregate restitution claims against a particular defendant may far exceed that defendant's resources, it has no apparent grounding in the text or legislative history of the MVRA.  The relevant question for restitution purposes, as discussed at Part III above, is whether or not Price Hill and the associated neighborhoods constitute "victims" for MVRA purposes.  If they were victims, the Court–barring a finding under 18 U.S.C. §§ 3663A(c)(3) that the proposed award would be too complex or burdensome to administer–would be bound to order restitution.  Because they are not victims, however, the Court may not order any restitution.

## IV.    RESTITUTION FROM OTHER DEFENDANTS

As noted above, Price Hill Will has withdrawn its original restitution demands against Defendants Minger and Killinger, and Trustcorp has withdrawn its demands against Bold, Roberson, Jasper, Powers and Killinger, pursuant to civil settlements.  See Introduction and Part I, supra.  Some decisions, however, suggest that private parties cannot "waive" application of criminal restitution statutes by entering into civil settlements, and that a court must still order restitution against a settling defendant unless it determines that the settlement in question entirely "offsets" the relevant losses or serves the penal purposes associated with restitution.  See 18 U.S.C. § 3664(j)(2); United States v. Savoie, 985 F.2d 612, 619 (1st Cir. 1993) (VWPA); United States v. Sheinbaum, 136 F.3d 443, 447-49 (5th Cir. 1998) (VWPA).

The Court's finding that Price Hill and other communities targeted by the flipping scheme are not compensable victims for MVRA purposes, and therefore not entitled to restitution from Defendant Trester, also precludes restitution awards from Defendants Minger

and Killinger to these communities.  The question of whether the Court must order Defendants Bold, Roberson, Jasper, Powers and/or Killinger to pay restitution to *Trustcorp* is not as easily resolved, because there is no apparent dispute that Trustcorp qualifies as an "MVRA" victim. The Court notes, however, that once a defendant contests a restitution demand, the burden shifts back to the restitution petitioner–or the United States, as sponsor–to make an affirmative showing a restitution award is appropriate.  See, e.g., Sheinbaum, 136 F.3d at 449.  Defendants Bold, Roberson, Jasper, Powers and Killinger challenged Trustcorp's restitution demands at their sentencings, prompting this Court to order restitution hearings before Judge Hogan.  At those hearings–presumably because Trustcorp was then negotiating civil settlements with each Defendant–neither Trustcorp nor the United States presented any significant additional evidence on Trustcorp's restitution demands.  Thus, even if the Court were otherwise obliged to order Bold, Roberson, Jasper, Powers and/or Killinger to pay some restitution to Trustcorp, it does not have enough information on Trustcorp's outstanding losses–if any–to calculate appropriate awards.  See, e.g., United States v. McDaniel, 398 F.3d 540, 555 (6th Cir. 2005) (barring, under 18 U.S.C. § 3663(j)(2), restitution awards that allow petitioners to double-recover their losses).

The Court therefore declines to order Defendants Minger or Killinger to pay any criminal restitution to Price Hill and other affected communities, and also declines to order Defendants Bold, Roberson, Jasper, Powers, or Killinger to pay any criminal restitution to Trustcorp.

## V.       CONCLUSION

In declining Price Hill Will's restitution request, the Court does not mean to suggest that the residents of Price Hill and the other Cincinnati neighborhoods where properties were flipped were not–in the ordinary sense of the word–victimized by Trester and his fellow Defendants.  On the contrary, as Judge Hogan recognized in his R&R, there is little reason to doubt that

21

Defendants' fraudulent scheme has–to some extent–depressed property values and thereby harmed the residents of Price Hill and other targeted communities.  Unfortunately, because it appears that Congress did not intend these communities to be treated as criminal "victims" for purposes of criminal restitution awards under the MVRA, the Court's hands are tied.  In closing, the Court can only commend the leaders of Price Hill and Price Hill Will, Price Hill Will's counsel at Legal Aid of Greater Cincinnati, State Representative Steve Driehaus, and witnesses Smith and Blume for their obvious dedication to remedying the important and difficult problems highlighted in Price Hill Will's petition and testimony.

For the reasons at Part III above, the Court **ADOPTS**, with the modifications expressed in this Order, Magistrate Judge Hogan's Report and Recommendation on Restitution (doc. #28).  Price Hill Will's demand for criminal restitution from Defendant Ronald Trester is therefore declined.  In addition, for the reasons at Part IV above, the Court does not order any of the other Defendants named in this Order to pay restitution to any party.

IT IS SO ORDERED.


____s/Susan J. Dlott_____
Susan J. Dlott
United States District Judge

22